## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LETICIA WARD,<br><br>        Plaintiff,<br>v.<br><br>MATHEMATICA POLICY<br>RESEARCH, INC.,<br><br>        Defendant. | **COMPLAINT AND**<br>**JURY DEMAND** |

## PARTIES

1. The Plaintiff, Leticia Ward (hereinafter "Ms. Ward," "Ward," or "Plaintiff") is an individual residing at 55 Meacham Road, Apartment #1, Somerville, Middlesex County, Massachusetts.

2. Defendant Mathematica Policy Research, Inc. (hereinafter "Mathematica" or "Defendant") is a foreign corporation with its principal place of business at 600 Alexander Park, Suite 100, Princeton, Mercer County, New Jersey.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## STATEMENT OF FACTS

5. In or about May, 2007, Mathematica hired Ms. Ward as an "Office Administrator I," at an annual salary of $45,000, with additional compensation including but not limited to eligibility to participate in the "full package of compensation and benefits available to

[Mathematica's] employees, including life, health, dental, and disability coverages," and eventual eligibility to participate in Mathematica's "401(k) profit-sharing and employee stock ownership plans."

6. Over the course of her employment with Mathematica, Ms. Ward was an extremely strong performer.

    a. In her first three years of employment, Ms. Ward was promoted to "Office Administrator II" and her performance reviews noted that she "consistently exceeds expectations" or "often exceeds expectations" in virtually every category for which she was evaluated.

    b. In 2009, Ms. Ward received a "double-promotion," as Mathematica promoted her two levels to "C1 Office Manager."

    c. Over the course of her employment, Ms. Ward routinely received a merit-based end-of-year bonus that was typically reserved for senior level management.

    d. Her 2010 performance review noted that "Tish had another outstanding year, rising to the challenges of a growing office that requires ongoing management," and "Tish is highly organized and moves easily from one task to another during the day, covering a wide range of tasks in a short period of time."

    e. Her 2011 performance review noted that "Tish had another outstanding year and continues to be the 'go-to' person for office-related matters in Cambridge."

    f. Her 2012 review noted "Tish continues to excel as the Cambridge office manager" and "she is an indispensable member of the Cambridge staff and has made contributions across offices as well."

    g. Prior to her 2013 performance review, Ms. Ward took the initiative to complete coursework to receive Facilities Management certification and was promoted to "Facilities Specialist II." Her 2013 review noted "that Tish really cares about the physical environment and staff in her office and strives to do her very best for them and contribute to the success of the company as a whole."

    h. Ms. Ward's 2014 performance review noted that "Tish will always get the job done" and that "beyond the demanding day to day management of Facilities in the Cambridge office, Tish enthusiastically accepted the challenges of other projects in the companywide, corporate arena."

    i. Ms. Ward's 2015 performance review noted that "[o]ver the past year Leticia (Tish) has exhibited significant and enthusiastic commitment and ownership of the Cambridge facility."

7. On January 18, 2017, Ms. Ward visited her doctor for evaluation because she was experiencing mental and physical exhaustion related to stressful working conditions. A lack of an effective supporting staff made it necessary for Ms. Ward to do the work of three people for a substantial period of time.

8. Ms. Ward's doctor recommended that she take time off from work to recover from her serious exhaustion.

9. On or about January 10, 2017, due to her medical condition, Ms. Ward notified her supervisor, Steven Thompson ("Thompson"), that she was requesting a personal leave of absence, at the recommendation of her Human Resources Manager, Steven Lee ("Lee").

10. Ms. Ward requested that the leave be effectuated in May 2017, in order to give Mathematica ample time to plan around her absence.

11. On or about January 19, 2017, Ms. Ward was summoned to a meeting with Thompson and Lee.

12. During the meeting, Thompson and Lee informed Ms. Ward that her request for leave had been denied, and Thompson commented that Ms. Ward was "too integral to go on leave for that long," or words to that effect.

13. During the January 19 meeting, Lee asked Ms. Ward if she had submitted her request for leave to The Hartford, Mathematica's short term disability insurer ("The Hartford"), as required by the company.

14. Ms. Ward responded that she was unaware of this being a necessary part of taking a personal leave of absence, reaffirmed that her request was medically necessary, and stated that she would follow up by filing a request with the Hartford for a leave of absence under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA").

15. After this meeting, on or about January 26, 2017, Ms. Ward filed a request for FMLA leave with The Hartford, requesting that leave begin May 1, 2017 and to last twelve weeks.

16. Although Ms. Ward had requested leave of absence to treat her diagnosed exhaustion due to overwork and stressful working conditions, Defendant also informed Plaintiff that, in addition to denying her request, Mathematica would be requiring her to train as the backup "Lease Manager."

17. The Lease Manager is a far more senior-level and highly paid position than the D1 Senior Manager position held by Ms. Ward.  Nevertheless, Mathematica informed Ms. Ward

that she would be required to take on a portion of the Lease Manager role on a permanent basis.

18. On or about February 22, 2017, Mathematica terminated Ms. Ward's employment. Thompson and Lee met with Ms. Ward and informed her of the termination.

19. Thompson was unable to, or refused to, provide Ms. Ward with any legitimate reason why Mathematica had terminated her employment, and instead made the false claim that she had threatened another employee.

20. The only reference in Ms. Ward's personnel file to her "threatening" another employee is contained in a note summarizing her termination meeting.

21. Mathematica's basis for the allegation that Ms. Ward had "threatened" another employee was a conversation Ms. Ward had with Lee in a closed-door meeting regarding placing Kyle Coston ("Coston"), Ms. Ward's subordinate, on corrective action.

22. In an effort to illustrate that Coston was generally disrespectful, particularly to the Plaintiff, and to emphasize the need to place Coston on corrective action, Ms. Ward made the comment that Coston "wears the type of smirk you want to slap off," or words to that effect, when he acts in certain ways around the office.

23. These comments were never communicated to Coston.

24. Mathematica terminated Ms. Ward approximately two to three weeks after she submitted her request for FMLA leave.

25. Mathematica's stated reason for terminating Ms. Ward was mere pretext.

**Statement of Claims**

## COUNT I

**INTERFERENCE WITH EXERCISE OF PROTECTED RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)(1)**

26. Plaintiff realleges the foregoing paragraphs of her complaint, as if fully set forth herein.

27. At all times relevant hereto, Mathematica employed more than fifty people.

28. Prior to her request for FMLA leave, Ms. Ward had worked for Mathematica in excess one thousand two hundred and fifty (1,250) hours.

29. Ms. Ward's mental and physical exhaustion constituted a serious health condition.

30. By her termination, Ms. Ward was denied leave and retaliated against in violation of the Family and Medical Leave Act ("FMLA").

31. As a result of Mathematica's actions, Ms. Ward has suffered injury.

## COUNT II

**RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)(2)**

32. Plaintiff realleges the foregoing paragraphs of her complaint, as if fully set forth herein.

33. Plaintiff availed herself of her right under the FMLA to take leave time.

34. As a result of Plaintiff's availing herself of her rights under the FMLA, she suffered an adverse employment action, namely her termination.

35. Plaintiff's availing herself of her rights under the FMLA was the cause of her termination.

## **RELIEF REQUESTED**

WHEREFORE, Ms. Ward respectfully requests that this Court:

(a.) Order that she be reinstated or constructively reinstated to her former position, with the same seniority status that she would have had but for the discrimination and enjoin the Defendant from further retaliation against her;

(b.) Award her all back pay and benefits, including salary increases, bonuses, stock options, vacation pay, and health insurance, with interest on same running from February, 2017, until the date a final judgment enters for her;

(c.) Award her money damages for the emotional distress caused by the unlawful actions of the Defendant;

(d.) Award compensation for all special damages sustained as a result of the Defendant's actions, including litigation costs, expert witness fees and reasonable attorney fees;

(e.) Award her liquidated damages;

(f.) Award her exemplary damages;

(g.) Award all other relief the Court deems necessary to make her whole.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted,
LETICIA WARD,
By her Attorneys,

*/s/ Patrick D. Banfield*
_____
Patrick D. Banfield, BBO#: 664836
THE LAW OFFICE OF ALAN H. CREDE
8 Faneuil Hall, Suite 300
Boston, MA  02109
Tel:  (617) 319-2870
Fax: (617) 977-8998
pbanfield@credelaw.com